**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

CLEVELAND S. ROGERS,

       Plaintiff,                  CASE NO. 07-CV-12220

v.                               DISTRICT JUDGE THOMAS LUDINGTON
                                 MAGISTRATE JUDGE CHARLES BINDER

CITY OF DETROIT,
DIEASREE HARRELL,
KENNETH BALINSKI,
JOANN MILLER,
MARVIN REDMOND,
GASPER ROSSI, and
SCOTT SHEA,

       Defendants.

_____/

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**</u>
<u>**DEFENDANT HARRELL'S AND DEFENDANT BALINSKI'S MOTION TO DISMISS**</u>
(Dkt. 47)
<u>**AND PURSUANT TO 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B)**</u>

## I.   <u>RECOMMENDATION</u>

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion be

**GRANTED** as to Defendant Balinski in all respects and **GRANTED IN PART** and **DENIED IN**

**PART** as to Defendant Harrell.  More specifically, I recommend that the motion should be denied

as to Defendant Harrell regarding Plaintiff's excessive force claim under the Fourth Amendment,

and granted in all other respects.

**IT IS FURTHER RECOMMENDED** that the complaint be *SUA SPONTE* **DISMISSED**

pursuant to 28 U.S.C. § 1915A(b) and 1915(e)(2)(B) as to the remaining Defendants, i.e., City of

Detroit, Joann Miller, Marvin Redmond, Gasper Rossi, and Scott Shea.

## II.   <u>REPORT</u>

## A.    Introduction and Procedural History

By order of United States District Judge Thomas Ludington, this *pro se* civil rights case was referred to the undersigned Magistrate Judge for pretrial case management on July 16, 2006. (Dkt. 13.) Plaintiff's original complaint was filed on May 22, 2007, and named as defendants the Detroit Police Department and Officer Dieasree Harrell. (Compl., Dkt. 1.) The claims arise from an incident that occurred on April 25, 2006, when Plaintiff was shot in the leg by Officer Harrell during the officer's pursuit of Plaintiff.

On October 19, 2007, the undersigned issued a Report and Recommendation ("R&R") recommending that Defendant Detroit Police Department be *sua sponte* dismissed because it is not an entity that is capable of being sued. (Dkt. 25.) Plaintiff filed objections (Dkt. 26) and a motion to amend his complaint. (Dkt. 28.) On February 5, 2008, Judge Ludington granted Plaintiff's motion to amend the complaint and rejected the R&R as moot. (Dkt. 31.) Plaintiff filed his Second Amended Complaint on May 12, 2008. (Dkt. 36.)[1] In addition to substituting the City of Detroit for the Detroit Police Department, the Second Amended Complaint also added Kenneth Balinski, Joann Miller, Marvin Redmond, Gasper Rossi, and Scott Shea as defendants. Plaintiff describes these new defendants as "police department officials." (Sec. Am. Compl., Dkt. 36 at 5.)

---

[1]Although the docket still indicates that the Detroit Police Department is a defendant and does not indicate that the City of Detroit was added as a defendant, I note that Plaintiff's Second Amended Complaint expressly names the City of Detroit in place of the Detroit Police Department in the caption. (Dkt. 36.) Therefore, the caption used here is correct. Further support for this conclusion is found in the order granting leave to amend, which indicates that the reason for the amendment was to add the City of Detroit in place of the Detroit Police Department since the City of Detroit is the real party in interest. (Dkt. 31.) Plaintiff further adds to the confusion, however, by continuing to name the Detroit Police Department in the text of the Second Amended Complaint. (Dkt. 36 at 3-5.) Although the caption of a pleading is generally not determinative of the parties, in this instance, the caption accurately reflects the purpose for the amendment and will be considered an accurate portrayal of the real parties in interest. *See Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467, 469 (6th Cir. 1964) ("[T]he caption is not regarded as containing any part of the plaintiff's claim. We must look to the allegations of the complaint in order to determine the nature of plaintiff's cause of action.").

On June 27, 2008, Defendants Dieasree Harrell and Kenneth Balinski filed a joint motion to dismiss (Dkt. 47), to which Plaintiff filed a response. (Dkt. 48.) Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation on the pleadings without oral argument.

## B. Background Facts & Plaintiff's Allegations

Plaintiff explained in his deposition that, on April 26, 2006, he passed a home at 11942 Griener[2] in the City of Detroit which he had passed frequently and had never seen anyone there, so he decided to "check it out" and, if no one was home, he would consider moving in and asserting "squatters rights." (Pl. Dep., Dkt. 47, Ex. 3 at 9-10.) Plaintiff knocked on the door and heard nothing, so he stood on a nearby milk crate, lifted the screen, and looked in the window. (*Id.* at 10.) Just as he was noticing the "burglar bars" on the window, the police approached. (*Id.*) When Plaintiff noticed that the car was a police car, he jumped down from the crate and ran towards the back yard, which was fenced in. (*Id.* at 11.) After reaching the back yard and sensing that he was being chased, Plaintiff started climbing the eight-foot wooden fence or the gate portion of the fence. At some point he saw the police officer, jumped back down to the ground, and ran toward the garage. (*Id.* at 11-12.) Plaintiff then tried to jump the fence near the garage. Plaintiff had his hands on the fence when the officer came up, grabbed him, and pulled him off the fence. (*Id.* at 12.) Plaintiff stated that he landed on his feet, caught his balance, and "broke into the motion to go." He started to take a step (or possibly did take one step) when the officer shot him in the left leg. (*Id.* at 12-13.)

---

[2]Greiner is also spelled Griner in the relevant documents; for purposes of this R&R, they are interchangeable.

The gunshot struck Plaintiff's left leg approximately five inches above the ankle or twelve inches below the knee, somewhere between the front and the side of the leg. (*Id.* at 13.) Plaintiff testified that he fell to the ground and the officer started kicking him, saying, "look what you made me done, and it wasn't like a constant kick. It was just like a spur kick every now and then out of anger or something . . . maybe three to four kicks," but states that after her partner came around the corner, she did not kick him anymore. (*Id.*) The officer referenced was later identified as Defendant Harrell. Plaintiff had to undergo surgery on his leg to preserve it and currently has limited use of the leg and suffers considerable pain. (Sec. Am. Compl., Dkt. 36 at 8, 10.)

The police report generally confirms Plaintiff's account but diverges with respect to Defendant Harrell's use of the gun:

> As soon as perp[etrator] saw us he ran to the rear of the location with wrt[3] giving foot chase yelling, "police, stop!" Perp ignored wrt's commands and cont[inued] to run to the rear fence clutching his waist-band area through his clothing. Wrt in fear for her life then withdrew DPD issued .40 cal serial #dpd03813 [] glock and repeatedly ordered perp to stop. At the fence, perp tried to climb over it and wrt grabbed perp pulling him off of the fence at which time perp turned on wrt and punched her twice in the face. Perp then grabbed wrt's weapon with both of his hands trying to take it from wrt and causing it to discharge and striking perp in the lower left leg . . . .

(DPD Arrest Report, Dkt. 47 at Ex. 4.) Defendant Harrell's affidavit adds that the gun she carried "featured no mechanical safety device . . . the weapon was always 'live' and if pulled, its trigger would fire a round down its barrel . . . ." (Dkt. 47, Ex. 6 ¶ 11.) She further states she had no deliberate intention to fire the weapon and that she "cannot state with certainty, in fact, whether the weapon's trigger was engaged by any one of the fingers on either hand in which I held it, or whether the weapon's trigger engaged when it snagged on my jacket, pants leg, or even Plaintiff's

---

[3]Although not explicitly stated, the Court believes that "wrt" stands for "writer." This police report states that it was entered by Officer Dieasree Harrell on April 26, 2006.

hands as he lashed out at me." (*Id.* ¶¶ 13-14.) Harrell's affidavit refers to Plaintiff striking her twice in the face but does not specifically mention Plaintiff trying to take the weapon from her. Instead, her affidavit states that "[d]uring the altercation, my only thought was to keep my weapon out of Plaintiff's possession and control." (*Id.* ¶ 10.) Neither does her affidavit reiterate the statement in the arrest report that Plaintiff was "clutching his waist-band area though his clothing," which then apparently caused Defendant Harrell to "fear for her life" and draw her weapon. (Dkt. 47 at Ex. 4.)

Plaintiff was charged with attempted home invasion first degree, MICH. COMP. LAWS § 750.110a(2); attempted disarming a peace officer, MICH. COMP. LAWS § 750.479b(2); and resisting and obstructing an officer causing injury, MICH. COMP. LAWS § 750.81d(2). The first two counts were vacated and, after a bench trial, Plaintiff was found guilty of resisting and obstructing an officer causing injury, which is a four-year felony.[4] (Dkt. 47 at Ex. 8.)

Plaintiff's Second Amended Complaint avers that "Defendant Dieasree Harrell and the Detroit Police Department of shooting a alleged unarmed fleeing felone were maliciously and sadistically and caused a excessive force claims as well as a crue and unusual punishment claim in violation of the Forth and Eighth Amendment to the United States Constitution." (Dkt. 36 at 4.)[5] The complaint further alleges that the "Detroit Police Department, City of Detroit, has executed rules, customs, policy and training of its police officer Dieasree Harrell in the use of force

---

[4]I note that Michigan Compiled Laws § 750.81d(2) provides that an individual who "assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both." I am puzzled how the state court could have found Plaintiff guilty of this offense since there is no indication that the officer was injured. However, the propriety of Plaintiff's conviction is not before me.

[5]The use of "[sic]" to denote grammatical errors is avoided in this R&R; the language is quoted as written by Plaintiff. In addition, although Plaintiff's documents use all capital letters, at times, I have substituted standard upper and lower cases.

which led to the constitutional deprivation of the Plaintiff Cleveland Rogers right to be secure in his person as guaranteed by the Forth Amendment of the U.S. Constitution." (*Id.*) Correspondingly, Plaintiff complains that the police department and the City of Detroit have failed to create rules to protect Plaintiff from a violation of his Fourth Amendment rights. (*Id.*)

Plaintiff further avers that Defendant City of Detroit's "execution of use of deadly force policy is deliberately indifferent to the rights of Plaintiff and proximately caused the injuries, in violation of rights under the 4th, 8th and 14th Amendment to the United States Constitution. The right to be secure in his person, free from cruel and unusual punishment and equal protection of the law." (*Id.*)

Plaintiff also contends that the City of Detroit "failed to create policy to prevent the police department officials from conspiring to conceal and fabricate evidence of a crime that did not occur to justify a unlawful shooting of a certain class citizen, in violation of the 1st, 5th, 4th, 8th, 9th, and 14th Amendment." (Dkt. 36 at 5.) Similarly, Plaintiff asserts that the City of Detroit "has executed a use of force investigative policy that is designed to frustrate citizens constitutional right to redress for police shooting of fleeing felons, allowing official to hide the truth of shooting through the concealment and fabrication of evidence. In violation of the 1st, 5th, 13th, and 14th Amendment of the United States Constitution." (Dkt. 36 at 6.)

Plaintiff also alleges that the "City of Detroit, Police Department officials, Dieasree Harrell, Lt. Kenneth Balinski, Scott Shea, Joann Miller, Marvin Redmond, and Gasper Rossie conspired to fabricate evidence of a crime that did not occure to justify a police shooting to frustrate any legal redress the Plaintiff is entitled during the city's election year, in violation of the 1st, 4th, 5th, 8th, 9th, 13th and 14th Amendment of the United States Constitution." (Dkt. 36 at 5-6.)

As indicated by Plaintiff's affidavit, Defendant Harrell is the officer who shot Plaintiff. The only allegation regarding Defendant Redmond is that "Officer Harrell met with Supervisor Redmond immediately after the shooting, at the scene, the meeting occurred to concoct a story of events to justify the shooting of a unarmed fleeing felon." (Dkt. 36 at 8.) The only allegation against Defendants Miller and Shea is that "[o]ther officers were assigned to the case as to prevent a false version of events from being exposed. Joann Miller and Scott Shea conducted the investigation in accordance with Citys policy directive . . . [and they] headed the investigation by not investigating any of the officers discrepancies of the shooting" so as to not "destroy Officers Harrell and Godbee story of events . . . ." (Dkt. 36 at 8 - 10.)

The sole allegation concerning Defendants Balinski and Rossi is that "Officers Kenneth Balinski and Gasper Rossi conducted a internal investigation of the use of force by not investigating and authorizing medical treatment for fabricated injurys on the shooting officer. Documenting injurys in reports to create evidence to support the shooting officer claims to frustrate Plaintiffs legal redress" and "not to destroy Officers Harrell and Godbee story of events . . . ." (Dkt. 36 at 9-10.)

Plaintiff seeks compensatory and punitive damages and any other relief available for damages caused by the alleged excessive force. (Dkt. 36 at 11-13.)

## C.     Defendants Harrell and Balinski's Motion to Dismiss

### 1.     Motion Standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To determine whether a complaint fails to state a claim and is therefore subject to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must view the complaint in a light most favorable

to the plaintiff, accepting as true all well-pled factual allegations. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarty*, 8 F.3d 329, 332 (6th Cir. 1993)). The court need not accept as true legal conclusions or unwarranted factual inferences contained in the pleadings. *Id.* (citing *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). To survive the motion, "the complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)). The elements of a civil rights claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

Where a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, courts may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999), nor may courts construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Neither may the court "conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), nor create a claim for Plaintiff, *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975), because to hold otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the

strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Thus, the police report that is central to the complaint and is attached to the instant motion and the Plaintiff's deposition may be considered as fleshing out the allegations in the complaint and may therefore be referred to without converting the motion to a summary judgment motion. *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

## 2. Conspiracy to Fabricate False Criminal Charges

Plaintiff alleges that Defendants Harrell and Balinski participated in a conspiracy to fabricate false criminal charges against him. Defendants Harrell and Balinski contend that Plaintiff's claims are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Dkt. 47 at 12-16, 22.) The essence of Plaintiff's conspiracy claim is that the fabrication of false criminal charges against him amounted an unconstitutional conviction and imprisonment.

Generally, suits challenging the fact or duration of confinement must be brought under the habeas corpus statutes and not § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 489-90, 93 S. Ct. 1827, 1836 (1973). In *Heck v. Humphrey*, however, the U.S. Supreme Court considered whether this rule should be modified where a prisoner does not seek release but instead seeks an award of monetary damages. The Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. This "favorable termination" rule bars § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence that has not been overturned. *Id.* at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original).

In the instant case, Plaintiff was convicted of resisting and obstructing an officer (Defendant Harrell), causing injury. Plaintiff avers that all defendants "conspired to fabricate evidence of a crime that did not occur to justify a police shooting to frustrate any legal redress [to which] the Plaintiff is entitled. . . ." (Dkt. 36 at 5-6.) I suggest that these allegations seek to undermine the validity of his conviction and thus are barred by *Heck*. *See Abella v. Rubino*, 63 F.3d 1063, 1064-65 (11th Cir. 1995) (holding that the plaintiff's claim that defendants "knowingly and wilfully conspired to convict him falsely by fabricating testimony and other evidence against him" was barred by *Heck*); *Perez v. Sifel*, 57 F.3d 503, 505 (7th Cir. 1995) (claims that defendants procured

conviction by committing perjury, falsifying evidence, and withholding exculpatory evidence were barred by *Heck*); *Zhai v. Cedar Grove Municipality*, 183 Fed. App'x. 253, 255 (3rd Cir. 2006) (allegations that "the officers, prosecutor, and judge conspired to bring false charges to secure a release for any civil liability resulting from the incident . . . are barred, along with her challenges to the guilty plea itself, by *Heck*"); *Hundley v. Ziegler*, No. 07-848, 2007 WL 2345285,*4 (W.D. Pa. Aug. 16, 2007) ("Plaintiff is attempting to establish that the defendants conspired against him to falsely convict him due to their alleged racial animus . . . success in establishing such would necessarily render his convictions or sentences invalid" and thus, are barred by *Heck*); *Banko v. Brooks*, No. Civ. A. 06-946, 2006 WL 3227761, *5 (W.D. Pa. Nov. 2, 2006) ("Because success in establishing that the defendants conspired to falsely convict him, lying in the course of the criminal proceedings and committing perjury concerning plaintiff's status as a confidential informant, would necessarily render his convictions or sentences invalid, the reasoning of *Heck*, renders his claims non-cognizable in this civil rights action absent an invalidation of those convictions"); *First Black American President v. Taylor,* No. 4:06-CV-49, 2006 WL 2530400, *1 (W.D. Mich. Aug. 31, 2006) (where plaintiff asserted "a due process claim based upon [defendant's] alleged use of false evidence or information to obtain [plaintiff's] conviction, *Heck* also precludes such a claim").

I therefore suggest that the Motion to Dismiss be granted with respect to conspiracy claims against Defendants Harrell and Balinski.

### 3.    Eighth and Fourteenth Amendment Claims Against Defendant Harrell

Plaintiff avers that Defendant Harrell violated his 8th Amendment right to be free from cruel and unusual punishment. (Dkt. 36 at 4.) As to the Eighth Amendment, "[b]ecause the Cruel and Unusual Punishments Clause [of the Eighth Amendment] 'is concerned' with punishment by

the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citations omitted). As to the Fourteenth Amendment, "state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (citations omitted).

Although Plaintiff's claims are wide ranging, they are civil rights claims that grow out his being shot and wounded by Defendant Herrell. Thus, the categorization of Plaintiff's claims are to be determined by his status at the time he was shot. As a result, although the shooting of Plaintiff was "pretrial," he was not a detainee in jail at the time of the shooting, and therefore, Plaintiff has not stated a claim for which relief may be granted under the Eighth or Fourteenth Amendments. *See Thompson v. County of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) ("pretrial detainees held in jail are protected under the Fourteenth Amendment"). Therefore, I suggest that the Eighth/Fourteenth Amendment claim be dismissed.

### 4. Fourth Amendment Excessive Force Claim Against Defendant Harrell

Plaintiff avers that Defendant Harrell violated his 4th Amendment right to be free from excessive force. (Dkt. 36 at 4.)

#### a. Whether the Claim is Barred by *Heck*

Defendant Harrell contends that this claim is also barred by *Heck v. Humphrey.* (Dkt. 47 at 12-16, 22.) As stated earlier, *Heck's* "favorable termination" rule bars § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence that has not been overturned. *Heck*, 512 U.S. at 487. Although Defendant does not fully explain how an excessive force claim would undermine Plaintiff's conviction, Defendant presumably contends that if

Defendant Harrell had used excessive force or if Plaintiff did not assault Defendant Harrell, Plaintiff could not have been convicted of resisting and obstructing an officer causing injury.

In Michigan, however, a defendant may be convicted of resisting and obstructing without necessarily committing an assault and battery. For example, a knowing failure to comply with a lawful command is sufficient obstruction to satisfy the elements of the offense. MICH. COMP. LAWS § 750.81d(7)(a); *People v. Carter*, No. 258435, 2006 WL 664170, at *2 (Mich. Ct. App. Mar. 16, 2006) (sufficient evidence of obstruction existed where, as officers approached, defendant fled and was chased by officers who shouted "police" and "stop").

Before Michigan Compiled Laws § 750.81d was enacted, it was recognized that under Michigan Compiled Laws § 750.479, "the right to resist an unlawful arrest was, in essence, a defense to the charge of resisting arrest, because the legality of the arrest was an element of the charge." *People v. Ventura*, 262 Mich. App. 370, 374 (2004). Excessive force could render the arrest unlawful, so excessive force was also a defense to the charge of resisting and obstructing. *People v. Baker*, 127 Mich. App. 297, 299 (1983).[6] The right to resist an unlawful arrest was founded on the right of self-defense whereby the unlawful arrest was viewed as a battery against the person being unlawfully restrained. *People v. Eisenberg*, 72 Mich. App. 106, 111 (1976); *Detroit v. Smith*, 235 Mich. App. 235, 238 (1999). As a result, an arrestee was permitted to use "reasonable force" in reacting to the illegality of an officer's action. *People v. Krum*, 374 Mich. 356, 361 (1965).

---

[6]In Michigan, "resisting arrest" and "resisting and obstructing" are two different offenses. "Although the lawfulness of the arrest is an element of the former, it is not an element of the latter." *People v. Wess*, 235 Mich. App. 241, 244 (1999).

However, under Michigan Compiled Laws § 750.81d,[7] the lawfulness of an arrest is no longer an element of the charge of resisting and obstructing.[8] *Ventura*, 262 Mich. App. at 377.[9] Therefore, "a person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal under the circumstances of the occasion." *Id.* There is some question whether any form of a self-defense claim, such as in response to excessive force, remains plausible under § 750.81d. *People v. Rauch*, No. 263185, 2006 WL 3682754, at *3-4 (Mich. Ct. App. , Dec. 14, 2006) (noting that claim in *Ventura* was that officer lacked the right to make a warrantless arrest, not that the officer used excessive force).

Therefore, Plaintiff could have been convicted of resisting and obstructing without having committed an assault and even where the officer used excessive force. Consequently, I suggest that Plaintiff's excessive force claim will not imply the invalidity of his conviction and is not barred by *Heck*. *See Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) (holding that the favorable-termination requirement did not bar a § 1983 claim for excessive force because a conclusion that the defendant's use of force was objectively unreasonable would not necessarily call into question the plaintiff's criminal conviction for assault); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (noting that if it were to hold that *Heck* bars excessive force claims whenever plaintiff was convicted of resisting a lawful arrest then "police subduing a suspect could use as

---

[7] Enacted in 2002.

[8] The statute provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." MICH. COMP. LAWS § 750.81d. While others may have concluded that "performing his or her duties" did not include breaching those duties or performing the duties unlawfully, the *Ventura* court simply "decline[d] to 'read in' a lawfulness requirement." *Ventura*, 262 Mich. App. at 376.

[9] The constitutionality of this decision was recently upheld in an unpublished Michigan Court of Appeals opinion. *People v. Brown*, No. 270877, 2008 WL 2261926, at *4-5 (Mich. Ct. App. June 3, 2008).

much force as they wanted – and be shielded from accountability under civil law – as long as the prosecutor could get the plaintiff convicted on a charge of resisting.").

This conclusion is also supported by the Michigan courts' own interpretation of Michigan statutes and precedents. Michigan courts have noted that the statute "merely prohibits an individual from resisting or obstructing a police officer in performance of his duties . . . the statute does not foreclose challenges to the legality of a police officer's conduct in an appropriate forum." *Brown, infra* n.11 at \*5; *see also Wilson v. City of Detroit*, No. 271522, 2007 WL 677739, at \*2 (Mich. Ct. App. March 6, 2007) (citing *Ventura* and noting that "this rule has not been applied in a civil context" and finding a question of fact existed as to whether the "extent of the force used [by the officer] was reasonable").

### b.  Qualified Immunity and the Summary Judgment Standard[10]

Defendant Harrell argues that she is entitled to qualified immunity for her actions. (Dkt. 47 at 16-21.) The Supreme Court has explained that, pursuant to the defense of qualified immunity,"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the

---

[10]Because analysis of this claim will necessarily involve consideration of evidence outside the pleadings, as to this claim only, this issue will be analyzed under the summary judgment standard. Plaintiff will not suffer by conversion of the motion because his deposition testimony has been taken and will be considered.

officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step

two unless a genuine issue of fact exists under step one. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### i.  Whether a Constitutional Violation Occurred

Since "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' [i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865,  104 L. Ed. 2d 443 (1989).  "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Id.* at 394.

"[C]laims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008) (citations omitted).  In considering the reasonableness of the officer's conduct, courts consider three factors:  "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the

suspect is actively resisting arrest or attempting to evade arrest by flight." *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006) (citations omitted).

In the instant case, the severity of the potential crime that led to Defendant Harrell's investigation was an attempted home invasion of an abandoned home. Under the summary judgment standards, which require the evidence to be viewed in the light most favorable to the non-moving party, i.e., Plaintiff, I suggest that this crime is less than severe. Thus, this factor weighs in favor of Plaintiff.

As to any threat posed by Plaintiff, both Plaintiff and the account given in the police report concur that Plaintiff was running away, rather than being an aggressor. (Pl. Dep., Dkt. 47, Ex. 3 at 11-13; Police Report, Dkt. 47 at Ex. 4.) Although the police report mentions that Plaintiff was "clutching his waistband area," implying the potential presence of some form of weapon, Defendant Harrell's affidavit omits any such reference. (Police Report, Dkt. 47 at Ex. 4; Harrell Aff., Dkt. 47 at Ex. 6.) In addition, although the police report states that Plaintiff was attempting to grab her weapon, Defendant Harrell's affidavit states that her "only thought was to keep my weapon out of Plaintiff's possession," but does not mention Plaintiff affirmatively trying to take the weapon. (Police Report, Dkt. 47 at Ex. 4; Harrell Aff., Dkt. 47 at Ex. 6.) I suggest that a sworn affidavit is more reliable evidence than a police report. *See Shepard v. United States*, 544 U.S. 13, 22, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005) (for purposes of Armed Career Criminal Act, sentencing court cannot look to police report to determine sufficiency of factual basis for guilty plea); *United States v. McGrattan*, 504 F.3d 608, 616 (6th Cir. 2007) (holding affidavit supporting search warrant akin to police report that lacks the reliability of an affidavit of complaint). I further suggest that the evidence weighs in favor of finding that Plaintiff did not pose a serious threat to Defendant Harrell; therefore, this factor weighs in favor of Plaintiff.

As to whether the suspect was actively resisting arrest or attempting to evade arrest by flight, all agree that Plaintiff was attempting to flee the scene. (Pl. Dep., Dkt. 47, Ex. 3 at 11-13; Police Report, Dkt. 47 at Ex. 4; Harrell Aff., Dkt. 47 at Ex. 6.) This factor militates in favor of Defendant Harrell. *See Bouggess v. Mattingly*, 482 F.3d 886, (6th Cir. 2007) (while "resisting arrest by wrestling oneself free from officers and running away would justify the use of *some* force to restrain the suspect . . . it does not justify *deadly* force, especially when the struggle has concluded and the suspect is in flight") (emphasis in original); *Cardona v. City of Cleveland*, 129 F.3d 1263, 1997 WL 720383, at *9-14 (6th Cir. Nov. 10, 1997) (unpublished) (denying qualified immunity where officer and suspect struggled and suspect was shot during struggle where there was a disputed issue of fact whether the officer and suspect struggled over a gun).

Since two of three factors weigh in favor of Plaintiff, I suggest that there is a genuine issue of material fact precluding summary judgment as to the reasonableness of Defendant Harrell's conduct.

### ii.      Whether the Right was Clearly Established

I suggest that the Fourth Amendment right to be free from excessive force was sufficiently clearly established at the time of the instant conduct such that summary judgment in favor of Defendant Harrell on this basis would not be appropriate. *See Floyd v. City of Detroit*, 518 F.3d 398, 407-08 (6th Cir. 2008) ("The Defendants properly concede that a suspect's right to be free from the use of excessive force is clearly established."); *Bouggess*, 482 F.3d at 894.

### D.      Initial Screening of New Claims in Second Amended Complaint

### 1.      Screening Standards

The new claims Plaintiff raised in his Second Amended Complaint are subject to screening under several provisions of the United State Code. Pursuant to 28 U.S.C. § 1915(e), when a

plaintiff is proceeding *in forma pauperis*, as Plaintiff is here, the court "shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). In addition, another federal statute provides that the "court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). This screening process requires the court to "dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Since Plaintiff is proceeding *in forma pauperis* and is suing governmental employees, both of these provisions apply.[11]

### 2. Conspiracy to Fabricate False Criminal Charges

Plaintiff claims that Defendants Joann Miller, Marvin Redmond, Gasper Rossi, and Scott Shea also participated in the conspiracy with Defendants Harrell and Balinski to fabricate false criminal charges. (Sec. Am. Compl, Dkt. 36 at 5-6.) For the reason outlined above, I suggest that these claims are also barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).

### 3. City of Detroit's Deadly Force Policy

Plaintiff avers that the "Detroit Police Department, City of Detroit, has executed rules, customs, policy and training of its police officer Dieasree Harrell in the use of force which led to

---

[11]Since Plaintiff does not challenge the conditions of his confinement, screening provisions under the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*, do not apply. 42 U.S.C. § 1997e(c)(1).

the constitutional deprivation of the Plaintiff Cleveland Rogers right to be secure in his person as guaranteed by the Forth Amendment of the U.S. Constitution" and the "4th, 8th and 14th Amendment" and has "executed a use of force investigative policy . . . [i]n violation of the 1st, 5th, 13th, and 14th Amendment . . . ." (Dkt. 36 at 4, 6.) Correspondingly, Plaintiff complains that the City of Detroit failed to create rules to protect Plaintiff from violation of his Fourth Amendment rights and "failed ro create policy to prevent the police department officials from conspiring to conceal and fabricate evidence . . . in violation of the 1st, 5th, 4th, 8th, 9th, and 14th Amendment." (*Id.* at 4 - 5.)

"Section 1983 liability must be based on more than *respondeat superior*, or the right to control employees. Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) (quoting *Hays v. Jefferson County, Ky*, 668 F.2d 869, 874 (6th Cir. 1982)). In order to state a claim, Plaintiff must allege that the defendant made a deliberate choice among various alternatives and that the policy caused the injury. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1997); *Starcher v. Correctional Medical Services*, 7 Fed. Appx. 459, 465 (6th Cir. 2001). Plaintiff must show "'an unconstitutional action that 'implements' or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . .'" *Scarbrough v. Morgan County Bd of Ed.*, 470 F.3d 250, 261 (6th Cir. 2006) (quoting *Shamaeizadeh v. Cunningham*, 338 F.3d 535, 556 (6th Cir. 2003)).

In this case, as to the City of Detroit, a city government is not responsible for "every misdeed of [its] employees and agents." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th

Cir. 1993). A municipality is only liable when the custom or policy is the "moving force" behind the alleged deprivation of constitutional rights. *Bd. Of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In order to prove municipal liability, the Sixth Circuit requires a plaintiff to: (1) identify the municipal policy or custom, (2) connect the policy or custom to the municipality, and (3) show that his particular injury was caused by execution of that policy or custom. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). *See also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Clairborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).

I suggest that Plaintiff's Second Amended Complaint fails to identify an actual policy or custom and fails to connect an actual policy to the City. Therefore, I suggest that the City of Detroit should be dismissed from the instant lawsuit with prejudice because Plaintiff has failed to state a claim against it.

### E. Conclusion

For all the reasons stated above, I therefore suggest that Defendants Harrell and Balinski's motion to dismiss be granted in full as to Defendant Balinski, denied as to Defendant Harrell with respect to Plaintiff's excessive force claim under the Fourth Amendment and granted as to Defendant Harrell as to all other claims against her. I further suggest that all remaining claims against Defendants City of Detroit, Miller, Redmond, Rossi, and Shea be dismissed pursuant to this Court's duty to screen complaints and dismiss claims which fail to state a claim upon which relief may be granted.

### III. <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ 𝕮harles 𝕰 𝕭inder

CHARLES E. BINDER
United States Magistrate Judge

Dated: September 30, 2008

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on John A. Schapka, served on Cleveland Rogers #303106, Straights Correctional Facility, 4387 W. M-80, Kincheloe, MI 49788-1634, and served on U.S. District Judge Ludington in the traditional manner.

Date: September 30, 2008

By____s/Patricia T. Morris_____
Law Clerk to Magistrate Judge Binder